## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JACK KELLY, | ) | CASE NO. 1:07-cv-02856 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JULIUS WISLON, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Jack Kelly ("Kelly"), challenges the constitutionality of his conviction in the

case of *State v. Kelly*, Cuyahoga County Court of Common Pleas Case No. CR-04-455608.

Kelly, *pro se*, filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on

September 20, 2007, with the United States District Court for the Northern District of Ohio.  On

April 17, 2008, Warden Julius Wilson ("Respondent") filed his Answer/Return of Writ.  (Doc.

No. 9.)  Kelly did not file a Traverse.  This matter is before the undersigned Magistrate Judge

pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that

Kelly's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Kelly's conviction as follows:

[*P2]  The charges stemmed from a series of altercations that Kelly had with the victim -- his girlfriend.  At trial, the victim recanted her statements to the police and denied that Kelly had committed any transgressions against her.  In fact, she testified that she repeatedly approached the state and the court to drop the charges against Kelly because she had fabricated them.

[*P3]  Believing her recantations to be motivated by fear rather than conscience, the state relied on statements she made to law enforcement officers at the time she filed her complaints, as well as the testimony of those police officers who individually processed those complaints.

[*P4]  The first time period for the charges occurred in September 2003 when the victim and Kelly began fighting while attending a party.  At trial, the victim denied that Kelly "put his hands" on her at the party and thereafter that evening, but admitted that she told the police otherwise.  She said that they had an argument because she wanted to leave a party they were attending but he did not.  She said that she drove off with Kelly in the passenger seat and dropped him off at home.  The state contradicted this testimony with a written statement the victim gave to the police following  the incident.  In that statement, she told the police that she wanted to leave the party, but Kelly did not.  When she entered her car and tried to drive away, Kelly reached into the car and took the keys from the ignition. He then pulled her out of the car and grabbed, slapped and knocked her around. He threw her onto the pavement and slammed her against the passenger side door of the car, eventually putting her into the passenger seat.  He drove away, ignoring her pleas to let her out.  Eventually, he drove to his home where he exited the car.  The victim then took the car and drove to a girlfriend's house, where she was persuaded to file a police report.

[*P5]  When the victim made her police report, the police took photographs of her.  Those photographs showed the victim with a swollen face, bloody nose and a burn mark on her lip. The victim testified at trial that her swollen face and bloody nose were the result of crying. She said the burn mark came from Kelly's cigar which she "ran into."

[*P6]  When asked by the state about specific instances where Kelly had struck her with a cell phone or beat her with a wire hanger, the victim replied, "I don't recall."  The state then confronted her with another written statement in which she made rather specific allegations to that effect.  The victim conceded that she gave a statement in which she alleged that in March 2004, Kelly hit her in the face with a cell phone.  As a result of this incident, she bore a scar on her face. She identified photographs depicting the scar, but insisted that she fabricated how she received the scar.  She claimed that Kelly threw the phone against the wall in a fit

of anger and that the phone ricocheted off the wall and struck her by accident.

[*P7]  The victim likewise conceded that she gave a statement in which she said, "one time in May [2003] after he found out I was out with a friend, he took a wire hanger and hit me several times on my right leg. I did not come forward due to him telling me if I went to the police he would drag my mother's name through the mud as well as my father's."  Even after reading this statement in court, she denied recalling the incident. She then identified pictures of herself which showed the scar on her face and "light bruising on my leg."  Even though she recalled a meeting with the prosecuting attorney where she was asked if the bruises on her leg were a result of being struck by the wire, she claimed not to recall how she answered.

[*P8]  The victim continued to insist, however, that she fabricated her allegations out of anger.  She admitted not showing up for a previously scheduled trial because she thought her absence would lead to a dismissal of the charges against Kelly.  She further admitted that she was afraid of Kelly because "when he gets angry he has a tendency to get violent."  She read from her statement that she "definitely" believed that Kelly was using his threats against her family to intimidate her not to testify.  In fact, she said in her statement that she had a "mental breakdown" as a result of the pressure Kelly placed on her and required hospitalization.  Despite these traumas, she continued to see Kelly in violation of a court order forbidding the two from being together.

[*P9]  The state then offered the testimony of three police officers who were involved in taking statements from the victim.  The officer who took the statement following the September 2003 incident recalled that the victim came into the station with a bloody nose, swollen eye and a burn mark on her lip.  He identified photographs that he took of the victim, but said that her injuries were more significant than shown by the photographs.  He described the victim's demeanor as typical for an assault victim, and that she was "a bit hysterical" and "very intent on pursuing charges."  When the officer contacted Kelly about the victim's allegations, he denied being with the victim that night. Kelly told the officer that the victim had a chemical imbalance and "makes things up."  The officer later confirmed that Kelly had been at the party that night.

[*P10]  A lieutenant recounted how he interviewed the victim four days after she made her initial report.  Although her swelling had diminished, he could still see traces of it on her face, and he saw the burn mark on her lip.  The lieutenant prepared a statement for the victim based on questions and answers made during their time together.  He said that the victim signed the statement and he forwarded the case to the prosecuting attorney.

[*P11]  The lieutenant recounted how the charges were brought to trial, but that

the victim did not appear to testify.  When he located the victim, she told him that she did not receive a subpoena, so he personally handed her one and informed her that the court had ordered her presence.  She told the lieutenant that she needed time to change clothes for court and would meet him there.  She did not, however, appear for trial.  The court's docket shows that the charges against Kelly were voluntarily dismissed by the state.

[*P12]  A few months later the parties appeared for a second trial.  While waiting with the victim in a court hallway, the lieutenant spoke to the victim.  As a result of that conversation, the lieutenant learned of the May and August incidents and further learned that the victim had been pressured by Kelly to drop the charges.  This conversation prompted the second indictment with its additional charges.

[*P13]  A police detective testified that the victim came to him in August 2004, in the company of the police lieutenant, to make a report of abuse perpetrated by Kelly.  The detective did not believe that the victim was scared to make the report, but rather had a determination to "get this off her chest" and "be done with the whole situation."  The detective prepared a general report, and the victim signed a question/answer statement.  The detective took photographs which depicted swelling and a mark on her face, and bruising on her legs.  She told the detective that the mark on her face occurred when Kelly threw a cell phone at her, while the bruises on her leg were a result of being whipped by a wire coat hanger.  He admitted to being surprised by the victim's recantation of charges because she had been so adamant at the time she gave him her statement.

[*P14]  On June 3, 2004, the grand jury returned a multi-count indictment against Kelly in CR-452680.  Counts one and two of the indictment charged abduction, count three charged assault and count four charged disrupting public service.  The state voluntarily dismissed this indictment on October 13, 2004, apparently as a result of the victim failing to appear to testify at trial.  When the case was scheduled for retrial, the lieutenant learned from the victim that Kelly had perpetrated other, as yet charged, acts of violence.  It then refiled the case as CR-455608, under a new indictment.  The new indictment contained the previously filed charges and added as counts five and six charges of felonious assault which were alleged to have occurred on March 16, 2004 and May 9, 2004, respectively.  Count seven charged intimidation.

*State v. Kelly*, 2006 Ohio App. LEXIS 4800, 2006-Ohio-4879 at ¶¶ 2-14 (Ohio Ct. App. Sept. 21, 2006).

## II.  Procedural History

**A.    Conviction**

On August 17, 2004, the Cuyahoga County Grand Jury charged Kelly with two counts of

abduction in violation of Ohio Revised Code ("O.R.C.") § 2905.02, one count of assault in

violation of O.R.C. § 2903.13, one count of disrupting public service in violation of O.R.C. §

2909.04, two counts of felonious assault in violation of O.R.C. § 2903.11, and one count of

intimidation in violation of O.R.C. § 2921.04.  (Doc. No. 9, Exh. 1.)  A jury ultimately found

Kelly guilty except for the charge of disrupting public service.  (Doc. No. 9, Exh. 2.)

On November 12, 2004, the trial court sentenced Kelly to an aggregate term of thirteen

years incarceration.  (Doc. No. 9, Exh. 3.)

**B.    Direct Appeal**

Kelly, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for

the Eighth Appellate District ("state appellate court"), raising the following assignments of error:

1.    Appellant was denied his constitutional and statutory rights to a speedy trial.

2.    The trial court erred when it failed to grant Appellant's motion for grand
      jury minutes, and thus deprived Appellant of his constitutional right to due
      process and a fair trial.

3.    The trial court erred when it denied Appellant his constitutional right to due
      process and a fair trial when it allowed the State to introduce inadmissable
      hearsay.

4.    The trial court erred when it failed to grant Appellant's motion for
      acquit[t]al pursuant to Criminal Rule 29.

5.    The jury verdict was against the manifest weight of the evidence.

6.    The trial court's original sentencing of Appellant on November 12, 2004
      was in violation of his constitutional rights under the Ohio and United States
      Constitutions.

-5-

(Doc. No. 9, Exhs. 4 & 6.)

On September 21, 2006, the state appellate court affirmed Kelly's assault and felonious assault convictions but vacated the abduction and intimidation convictions as they were not supported by sufficient evidence.  *Kelly*, 2006-Ohio-4879 at ¶32.[1]

On December 7, 2006, Kelly, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  Kelly raised the following assignments of error:

I.  Appellant was denied his constitutional and statutory rights to a speedy trial.

II.  The trial court erred when it failed to grant Appellant's motion for grand jury minutes, and thus, deprived Appellant of his constitutional right to due process and a fair trial.

III.  The trial court erred when it failed to grant Appellant's motion for acquittal pursuant to Criminal Rule 29.

IV.  The trial court erred when it denied Appellant his constitutional right to due process and a fair trial when it allowed the State to introduce inadmissible hearsay.

V.  Appellant's constitutional right to effective assistance was violated when appellate counsel's performance fell below the objective standard of reasonableness where counsel failed to: 1. sever and statutory rights to a speedy trial; 2. cite to legal authority to support argument; and 3. raise material issue which, if raised, would hold a reasonable probability that the appeal would have been successful, prejudicing Appellant to a full and fair review on appeal as of right.

(Doc. No. 9, Exh. 8.)  On March 14, 2007, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 9, Exh. 9.)

---

[1]  On November 9, 2006, the state appellate court's opinion was replaced with another opinion.  *See State v. Kelly*, 2006-Ohio-5902, 2006 Ohio App. LEXIS 5862 (Ohio Ct. App. Nov. 9, 2006).  The two opinions yield the same decision and are indistinguishable except that the latter opinion omits several paragraphs discussing the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004) and its effect on the Confrontation Clause.

-6-

**C.  Resentencing**

The trial court held a resentencing hearing on January 29, 2007 and sentenced Kelly to an aggregate prison term of six years together with three years of post-release control.  (Doc. No. 9, Exh. 10.)  He received a six year sentence for each felonious assault conviction and a three to six month sentence for his simple assault conviction.  *Id.*  The sentences were ordered to be served concurrently.  *Id.*

Kelly, through new counsel, filed a timely Notice of Appeal with the state appellate court and set forth the following single assignment of error: "The Defendant was denied the effective assistance of counsel when counsel failed to request a new trial based upon the prejudicial effect of the previously dismissed charges."  (Doc. No. 9, Exh. 11.)  On December 20, 2007, the state appellate court overruled Kelly's assignment of error.  (Doc. No. 9, Exh. 13.)

On March 19, 2008, Kelly, *pro se*, filed a Notice of Appeal and a Motion for Leave to File a Delayed Appeal with the Supreme Court of Ohio.  (Doc. No. 9, Exh. 14.)  On May 7, 2008, the Supreme Court of Ohio denied leave and dismissed the appeal.

**D.  Federal Habeas Petition**

On September 20, 2007, Kelly filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: Petitioner's Sixth Amendment Right to Speedy Trial was Violated in Case Number #455608.

> GROUND TWO: Petitioner's Right to a Fair Trial Process [was] Violated when Petitioner's Motion for Grand Jury Minutes was denied.

> GROUND THREE: The last state court of review rendered an unreasonable or contrary opinion to that of the United States Supreme Court, as to petitioner's third proposition of law that was presented for review on appeal.

GROUND FOUR: Petitioner's Rights as Guaranteed Him under the 6th Amendment to the United States Constitution's (Confrontation Clause) by the States use of Impermissible Hearsay at Trial by Police.

GROUND FIVE: Ineffective Assistance of Appellant Attorney.

(Doc. No. 1.)

## III.  Exhaustion and Procedural Default

### A.    Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

### B.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his

-8-

claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless

-10-

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995);  *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

**C.  Ground One: Speedy Trial Rights**

In ground one of his petition, Kelly alleges that his Sixth Amendment right to a speedy trial was violated.  (Doc. No. 1.)  Respondent contends that Kelly has defaulted this claim since it was never raised as a federal constitutional claim before the state courts.  (Doc. No. 9 at 18-19.)

On direct appeal, Kelly never fairly presented a *federal* speedy trial claim before the Ohio courts.  (Doc. No. 9, Exhs. 4 & 8.)  Kelly claimed that the length of time that elapsed between his arrest and trial amounted to a violation of Ohio's speedy trial statute, a challenge based solely on state law and not on any principles of federal constitutional law.  *Id*.  A petitioner has not fairly presented his claim merely because the facts necessary to support a federal constitutional claim are present or because the constitutional claim appears to be self-evident.  *See Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983), *citing Anderson*, 459 U.S. at 6.  Rather, fair presentation requires a petitioner "citing a provision of the Constitution, federal decisions

-11-

employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Levine v. Trovik*, 986 F.2d 1506, 1515 (6th Cir. 1993).  Kelly's memoranda before the state appellate court and the Supreme Court of Ohio were devoid of any arguments concerning the federal constitutional right to a speedy trial or due process, thereby depriving the state courts of an opportunity to consider his federal claims and cure any potential errors.  Although Kelly entitled his assignment of error before the state appellate court as a denial of "his constitutional and statutory rights to a speedy trial," his actual argument is rooted solely in Ohio's speedy trial statute.  A review of the state appellate court's decision reveals that its ruling on this issue also was rooted firmly in state law without any discussion of federal constitutional standards.  Likewise, Kelly's brief before the Supreme Court of Ohio cites only Ohio law in support of his argument.  Thus, his federal claim was never fairly presented to the state courts.

It is well established that "[i]f the petitioner failed to exhaust state remedies and the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[, then] there is a procedural default for purposes of federal habeas [review] regardless of the decision of the last state court to which the petitioner actually presented his claims."  *Fields v. Bagley*, 275 F.3d 478, 482 n. 1 (6th Cir. 2001), *quoting Coleman*, 501 U.S. at 722.  Because Kelly could have raised his claims on direct appeal, he would be barred from raising them in an application for post-conviction relief.  Ohio courts have found that the doctrine of *res judicata* "bars a convicted defendant, who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or

could have been raised by the defendant ... on an appeal from that judgment." *State v. Benton*, 27 Ohio St. 2d 87, 90-91 (Ohio 1971); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994).  The doctrine of *res judicata* also applies to constitutional claims that could have been raised in a direct appeal.  *See Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Consequently, to the extent Kelly attempts to raise federal constitutional claims, his first ground for relief is procedurally defaulted.

Further, Kelly's speedy trial claim based on Ohio law is not cognizable upon federal habeas review as a federal court reviewing a petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process.") (citations omitted).  The statutory right to a speedy trial under Ohio law is not necessarily the same as the constitutional right to a speedy trial under the Sixth Amendment.  *See Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir. 2001).  In *Norris*, the Sixth Circuit expressly found that "[i]t is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of a violation of his *statutory right to a speedy trial* to be meritless."  *Id*. (emphasis added).

Nonetheless, a federal court may provide habeas relief if a state court's error in interpreting or applying its own laws rendered a defendant's trial so "fundamentally unfair" as to have deprived appellant of substantive due process.  *Id*.  Here, however, Kelly has not alleged the state

-13-

speedy trial ruling resulted in a fundamentally unfair trial. Generally, "fundamental fairness" has little application to pretrial proceedings and "that application is limited to events or circumstances that affect or tend to affect the fairness of the trial." *Hutchison v. Marshall*, 744 F.2d 44, 47 (6th Cir. 1984). As such, Kelly's first ground for relief should be denied.[3]

**D. Ground Four: Confrontation Clause Violation**

In ground four of his petition, Kelly alleges that his Sixth Amendment right to confront the witnesses against him was violated when the trial court allowed the introduction of hearsay statements made by the police officers at trial. (Doc. No. 1.) Respondent argues that Kelly waived review of this claim by failing to raise it before the state courts. (Doc. No. 9 at 22.) It is clear that Kelly never raised his ground four claim as a distinct Confrontation Clause claim before any state court. Although Kelly challenged the admission of certain hearsay evidence, Kelly only argued that the trial court erred in admitting the testimony because it was not subject to any exception under the Ohio Rules of Evidence. (Doc. No. 9, Exhs. 4 & 8.) Neither his brief before the state appellate court nor his brief before the Supreme Court of Ohio alleges that the admission of hearsay testimony deprived him of his right to confront witnesses against him. *Id.* Currently, Kelly would be unable to raise this claim in state court as it would be barred by the doctrine of *res judicata*. Ohio's post-conviction relief statute, O.R.C. § 2953.21, has long been interpreted to bar post-conviction consideration of any issue that was fully litigated before the judgment of conviction or on direct appeal from that judgment, or of any issue that could have been fully litigated before judgment of conviction or on direct appeal but was not. *See State v.*

---

[3] Even if this claim were not procedurally defaulted, the Court considered this argument in connection with Kelly's ineffective assistance of appellate counsel claim, as contained in ground five, and found it to be lacking in merit.

*Perry*, 10 Ohio St.2d 175, syllabus para. 7 (1967); *State v. Combs*, 100 Ohio App.3d 90, 98

(1994). As Kelly's Confrontation Clause claim may no longer be raised under state law, it is

procedurally defaulted. Furthermore, Kelly has not demonstrated cause for failing to raise this

issue before the state courts. As such, ground four of Kelly's petition is procedurally defaulted.

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.*

*Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.    Ground Two: Grand Jury Minutes**

Kelly argues that he was denied "fair trial process" when his motion for the disclosure of grand jury minutes was denied.  (Doc. No. 1.)

The Sixth Circuit has held that "there is no general constitutional right to discovery in a criminal case . . . ." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (*quoting Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)); *accord Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).  "[A]ll the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Lorraine*, 291 F.3d at 441.  Kelly, however, has failed to set forth any explanation as to how he was denied a fundamentally fair trial due to his

inability to discover minutes from the grand jury proceedings.

Both Ohio law and Federal Rule of Criminal Procedure 6(e) allow for the disclosure of evidence presented to a grand jury under certain circumstances.  *See, e.g., Smith v. United States*, 423 U.S. 1303, 1304 (1975) (finding that while a long line of cases has affirmed the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts, ... the Court has affirmed the power of district courts ... to order disclosure of evidence presented to grand juries" upon a showing of "particularized need" or "compelling necessity"); *State v. Treesh*, 739 N.E.2d 749, 90 Ohio St. 3d 460, 476 (Ohio 2001) (observing there is "a limited exception to the general rule in favor of grand jury secrecy, holding that an accused is not entitled to review the transcript of grand jury proceedings unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy") (internal quotations omitted).  Nonetheless, assuming *arguendo* that this entitlement to discovery of grand jury proceedings is a clearly established constitutional rule, Kelly has failed to demonstrate any particularized need or compelling necessity.  Kelly has made only a bare allegation that he has a "particularized need" for such discovery (Doc. No. 1).  His conclusory allegation, without more, is insufficient.  Therefore, ground two of his petition is without merit.

**B.    Ground Three: Sufficiency of the Evidence**

In ground three of his petition, Kelly asserts that the Ohio Supreme Courts' denial of his third proposition of law was contrary to clearly established federal law as found by the United States Supreme Court.  (Doc. No. 1.)  Respondent argues that this ground for relief is waived because Kelly asserted a sufficiency of the evidence claim before the state courts and not a

Confrontation Clause claim.[4]  To the extent Kelly is attempting to raise a Confrontation Clause claim in ground three, it is repetitive of his ground four claim which the Court previously concluded was procedurally defaulted.  However, the Court construes ground three of Kelly's petition as a claim that his convictions were not supported by sufficient evidence.  As Kelly's third proposition of law before the Ohio Supreme Court unambiguously raised a federal sufficiency of the evidence claim relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), his claim is not procedurally defaulted.

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny

---

[4]  Below his third ground for relief in a section entitled "Supporting Facts," Kelly cites case law that is more appropriate to a Confrontation Clause claim.  (Doc. No. 1.) Nonetheless, Kelly clearly references his third proposition of law before the Supreme Court, which raised a sufficiency claim.  Moreover, as Kelly is proceeding *pro se*, "'his pleadings are held to a less stringent standard than those prepared by an attorney' and are liberally construed in his favor."  *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007) (*quoting See Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)).

conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."
*Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing
Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to
the trier of fact limits the nature of constitutional sufficiency review.)

The state appellate court observed that while "[s]ome jurisdictions permit prior inconsistent
statements of a witness in a criminal proceeding to be used as affirmative evidence of the facts to
which such statements relate where the declarant is available or called as a witness at the trial, ...
Ohio does *not* follow this rule." *Kelly*, 2006-Ohio-5902 at ¶¶20-21.  Instead, according to the
state appellate court, "[a]n extra-judicial, unsworn, signed statement of a witness which has been
denied by the declarant under oath is not admissible as proof of the allegations contained
therein."  *Id*. (*quoting State v. Dick*, 271 N.E.2d 797, 27 Ohio St. 2d 162 (Ohio 1971)).  Thus, the
state appellate court, consistent with the trial court, allowed the use of properly objected to prior
out-of-court statements by the victim for impeachment purposes and not as substantive
evidence.[5]  *Id*. at ¶29.  Federal habeas courts are obliged to "accept a state court's interpretation
of that state's statutes and rules of practice."  *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

---

[5]  The trial court also cautioned the jury that the victim's prior statements and the hearsay
testimony of the police officers relating what the victim told them could only be
considered as impeachment testimony:

> [These statements are ] coming in for a specific reason and that is for you
> to look and examine the statements that were made as it relates to [the
> victim's] credibility, not to, generally speaking, whether these events
> actually occurred, you know; in other words, whether somebody was here
> at this place and time or actually committed a crime.  You can't consider it
> for that purpose regarding if somebody else is saying it, and that's why
> we limit the testimony regarding the hearsay exception.

(Tr. 315-16; *see also* Tr. 321.)

-19-

Similarly, a federal court is not free to ignore the pronouncement of a state appellate court on matters of state law. *Richards v. Money*, 2005 WL 1181856, Case No. 1:03CV1532, *4 (N.D. Ohio, May 18, 2005) (O'Malley, J.) (*citing Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000)).

While overturning Kelly's convictions for abduction and intimidation, the state appellate court affirmed Kelly's convictions for assault and felonious assault offering the following explanation of its decision.

> The only substantive evidence apart from the victim's statements were photographs depicting her injuries. These were taken in September 2003 and August 2004, contemporaneously with her statements. The September 2003 photographs show the victim with a bloody nose and a burn mark just above her upper lip. The officer who took these photographs testified that he could see swelling on the left side of her face, although he admitted that "I think the injuries were worse than what's shown here." The detective who took the August 2004 photographs testified that the photographs showed swelling on the left side of the victim's face and multiple bruise marks on her legs. Like the other officer, the detective conceded that the victim's injuries "don't show up as well in the photographs as they did in person."
>
> The photographs constitute independent proof of the two felonious assault and one assault counts. Thus, the jury could test the credibility of the victim's recantation by reference to the photographs. In other words, the jury had every right to consider the recantation as dubious in light of the demonstrated physical evidence of injury depicted in the photographs. A bloody nose, swelling and bruising were consistent with the kind of injury suffered as a result of an assault or felonious assault. The jury could find the victim's denial in light of this evidence to be unbelievable.

*Kelly*, 2006-Ohio-5902 at ¶¶30-31.

Admittedly, the substantive evidence in this case was not overwhelming. However, the question before the Court is whether the substantive evidence – the victim's testimony, Kelly's testimony, the testimony of the police officers, and the photographic evidence – was sufficient to uphold Kelly's convictions. Each of the convictions will be discussed in turn.

### 1.  Count Six: Felonious Assault

Count Six of the indictment charged Kelly with felonious assault for causing serious physical harm to the victim on May 9, 2004.  The following substantive evidence was presented. When asked whether Kelly hit her in the leg with a wire hanger in May, the victim initially testified that she could not recall, though she recalled making a statement to that effect in August of 2004.  (Tr. 181.)  Later on redirect, the victim changed her testimony by stating that, in May of 2004, Kelly hit her with a wire hanger causing bruises which did not heal until a short time before the trial started in October of 2004.  (Tr. 227.)  Kelly testified that he never hit the victim with a hanger.  (Tr. 354.)  He indicated that the two had seen a similar event portrayed in a movie they had watched.  (Tr. 354.)

On August 12, 2004, the victim presented at the Euclid police station where Detective Kucinski took pictures of the victim's injuries.  (Tr. 299-303.)  At trial, the victim identified herself as the subject of pictures taken on August 12, 2004 at the Euclid police station which depicted "light bruising on her leg."  (Tr. 182.)  Detective Kucinski testified that there were four or five bruise marks on the victim's right lower leg.  (Tr. 303.)

Felonious assault requires a showing that an accused knowingly caused serious physical harm to his or her victim.  Here, giving all reasonable inferences to the State and without weighing the credibility of witnesses, a reasonable juror could have found beyond a reasonable doubt that Kelly assaulted the victim.  Although the victim's testimony was inconsistent, the jury was free to believe her statement that Kelly had indeed assaulted her with a wire hanger. Photographic evidence of the bruises that remained on Kelly's legs months after the incident, as well as the victim's testimony that the bruises had only recently dissipated, are sufficient to

-21-

satisfy the serious physical harm element.

### 2. Count Three: Assault

Count Three of the indictment charged Kelly with assault for knowingly causing physical harm to the victim on September 25, 2003. Sufficient substantive evidence was presented to uphold the conviction.

The victim testified that she and Kelly engaged in a verbal argument while attending a get-together at the home of Kelly's sister due to the fact that she wanted to leave before Kelly was ready to do so. (Tr. 167-68.) According to Kelly, the victim was angry because his ex-girlfriend was in attendance. (Tr. 342-44.) The victim testified that she then proceeded to drive Kelly to his home in East Cleveland. (Tr. 168.) The victim, however, also testified that she had told the police a different version of events that same night. (Tr. 168-69.) Specifically, she stated that she told the police Kelly had hurt her by slamming her into the car and pushing her to the ground; and, that it was Kelly who drove her car to east Cleveland. *Id*. After dropping off Kelly, the victim drove to Parma to meet with a girlfriend prior to going to the police station to file a complaint. (Tr. 192.) She admitted that she told the police that Kelly had hurt her. (Tr. 169.)

According to the victim's testimony at trial, she had a swollen face because she was crying and upset. (Tr. 168-69.) She also testified that a burn mark on her lip was caused by her "running into" a cigar hanging from Kelly's mouth and that her nose started bleeding afterwards. (Tr. 168-69; 226-27.) The victim further testified that she had fabricated stories of physical abuse at the hands of Kelly in order to get money from her parents. (Tr. 170.)

Police Officer Brian McCann testified that he was on duty on September 25, 2003 when the

victim entered the Parma Police Station to file a complaint.  (Tr. 238.)  Officer McCann observed

that the victim had the following injuries: (1) a bloody and swollen nose; (2) swelling on the left

side of her face with a partially closed eye; and, (3) a burn mark on her lip.  (Tr. 239-40; 249-

51.)  He testified that he took the Polaroid photographs of the victim identified as State's

Exhibits 1 and 2.  *Id*.  He further stated that the victim's injuries were worse than depicted in the

photographs and were consistent with injuries seen in a typical assault case.  (Tr. 239-40; 242.)

At trial, the victim acknowledged that she was the subject of the photographs in the

aforementioned exhibits.  (Tr. 171-72.)  She testified that the photographs depicted a bloody

nose and one swollen eye, which she claimed was the result of her crying.  *Id*.  Officer McCann

testified that the victim was "hysterical" but intent on pursuing charges.  (Tr. 241.)

     The victim further testified that Kelly never touched her that night.  (Tr. 172.)  She

acknowledged making a statement to the police a few days after the incident.  (Tr. 173.)  The

victim was asked to read her out-of-court statement into the record.[6]  (Tr. 174-75.)  She testified

that she filed a complaint because Kelly had "made [her] mad."  (Tr. 176.)  At trial, Kelly

admitted that he had initially lied to the police about being in Parma with the victim on the day

of the incident.  (Tr. 363.)  Kelly, however, testified that the victim had been crying and that she

suffered from a nosebleed, but denied causing either the nosebleed or the victim's swollen face.

(Tr. 345-46.)

     It was undisputed that there was an argument between Kelly and the victim.  The only

question then remaining for the jury was whether the verbal altercation escalated into an assault.

---

[6]  The statement given to the police stated that Kelly "proceeded to grab, slap and knock
[the victim] around .. [and] threw [her] on the pavement."  (Tr. 174.)

Viewing the evidence in its entirety, the jury could reasonably have found that, based on the officer's testimony and the photographs, the victim's injuries were the result of an assault.  It certainly was not unreasonable for the jury to find the victim's assertion – that her almost swollen shut left eye and swollen nose were the result of crying – was implausible.  Further, the jury was free to find that Kelly's denial of responsibility was not credible.

### 3.  Count Five: Felonious Assault

Count Five of the indictment charged Kelly with felonious assault for causing the victim to be seriously harmed on March 16, 2004.  The following substantive evidence was presented. The victim identified State's Exhibit 12 as a statement she made to Euclid police on August 12, 2004.[7]  (Tr. 177-78.)  The victim testified that she and Kelly were engaged in an argument when Kelly became so angry that he threw a telephone against the wall.  (Tr. 178-79.)  She testified that the phone accidentally hit her in the face when it bounced off the wall.  (Tr. 178-79.)  In his testimony, Kelly confirmed that he and the victim were indeed arguing that day.  (Tr. 351.) Kelly testified that the victim walked out of the room where the argument occurred; and, that he threw the telephone shattering it against the wall at the same moment the victim returned.  *Id*. According to Kelly, the victim claimed a piece of the phone hit her, but he denied seeing anything hit her or seeing any resulting injury or mark on her face.  *Id*.  The victim displayed for the jury the scar she still had on her face from where she claimed the phone struck her.  (Tr. 179-80; 227.)

Detective Dennis Kucinski of the Euclid Police Department testified that he was on duty

---

[7]  State's Exhibit's 10, 11 and 12 – all signed out-of-court statements made by the victim – were not admitted as substantive evidence but only for impeachment purposes.  (Tr. 321.)

when the victim arrived at the police station to make a statement on August 12, 2004.  (Tr. 299-301.)  Detective Kucinski identified State's Exhibits 13 through 17 as photographs he took of the victim on that date.  (Tr. 302-03.)  He described the photographs as depicting a scar on her face below the left eye with some swelling on the left side of her face.  (Tr. 303.)  The victim also identified herself as the subject of pictures taken on August 12, 2004 at the Euclid police station which depicted a scar on her face.  (Tr. 182.)  The victim testified that she told the police that she delayed reporting the March 16 incident and the May 9 incident because Kelly threatened to drag her parents' name "through the mud."  (Tr. 183.)  On the witness stand, the victim reiterated that Kelly had indeed made such a threat.  *Id*.  She also testified that "[w]hen he gets angry [Kelly] has a tendency to get violent."  (Tr. 185.)

Again, viewing the totality of the evidence in the light most favorable to the prosecution, the jury could reasonably conclude that Kelly committed a felonious assault.  Kelly conceded that he was in an argument with the victim and that he threw a telephone in the victim's direction.  The victim testified that a piece of the phone hit her in the face and left a lasting scar.  Thus, the only real issue is whether Kelly "knowingly" caused the physical harm.  The jury could reasonably have concluded that Kelly was not a credible witness and that he intentionally threw the telephone at the victim in the heat of the argument.  Similarly, the jury could also have found that the victim was not a credible witness based on her admission that she would give a different rendition of events when in Kelly's presence.  (Tr. 229.)

The Court cannot substitute its own determination of guilt or innocence and must give deference to the factual determination made in state court.  All things considered, this Court cannot conclude that the state court's decision was objectively unreasonable in applying clearly

established federal law or an unreasonable determination of the facts in light of the evidence presented.  Under the applicable standards, Kelly's convictions are supported by sufficient evidence.

## C.    Ground Five: Ineffective Assistance of Appellate Counsel

In ground five of his petition, Kelly argues that his right to counsel under the Sixth Amendment was violated due to his appellate counsel's constitutionally ineffective representation.  (Doc. No. 1.)  Kelly's argument is not clearly defined.  Unlike the Respondent, the Court construes ground five of his petition as raising the following argument: appellate counsel was ineffective because he did not separately argue that his speedy trial rights under the *federal* constitution were violated.  *See* Discussion in Part III-C, *supra*.  Kelly's brief before the Supreme Court of Ohio spends over a page raising such an argument.[8]  (Doc. No. 9, Exh. 8 at 13-14.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so

---

[8]  Although Kelly raised additional bases for his ineffective assistance of appellate counsel claim in his brief before the Ohio Supreme Court, those arguments cannot reasonably be inferred from ground five of his habeas petition.

manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

To prove ineffective assistance of appellate counsel, appellant must show deficient performance of appellate counsel that is prejudicial to the defendant under the *Strickland* test. *See Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).  Counsel must provide reasonable professional judgment in presenting the appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986), *quoting Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).  Failure to raise "significant and obvious" issues on appeal can constitute ineffective assistance of appellate counsel.  *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999). "[No] decision of this Court suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U S 745, 750-54 (1983); *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990) (tactical choices are properly left to the sound professional judgment of counsel).  Failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005), *citing Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).

While appellate counsel nominally raised a federal constitutional speedy trial rights claim, he failed to present any argument based on case law interpreting the Sixth Amendment right to a speedy trial.  (Doc. No. 9, Exh. 4.)  "A four-factor balancing test has been established by the

Supreme Court to determine whether there has been a violation of an accused's constitutional right to a speedy trial.  These factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant."  *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir. 1998) (*citing Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993)).  Nonetheless, until a defendant suffers a delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *accord Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005) ("The length of the delay is a threshold requirement");  *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (first factor (delay) is considered the "triggering" factor); O'Dell, 247 F.3d at 667 (same).  The length of delay is measured from the earlier of the date of indictment or the date of arrest.  *See Maples*, 427 F.3d at 1026.  Generally, "a delay that approaches one year is considered presumptively prejudicial."  *Norris*, 146 F.3d at 327.

According to Kelly, he was first arrested on October 1, 2003 for the charges stemming from the incident occurring on September 25, 2003.  (Doc. No. 1.)  The charges were dismissed without prejudice on May 25, 2004.  *Id.*  On June 3, 2004, Kelly was reindicted on the same charges.  *Id.*  On August 17, 2004, the felonious assault charges stemming from incidents occurring in March and May of 2004 were added to the indictment as well as an intimidation charge.  (Doc. No. 9, Exh. 1.)  Trial commenced on October 3, 2004.  (Tr. 14.)  Thus, Kelly was not brought to trial on the misdemeanor assault charge until slightly over one year had elapsed since his initial arrest – a delay that is presumptively prejudicial.[9]  Nonetheless, an application of

---

[9]  Kelly's speedy trial rights claim is really only applicable to his misdemeanor assault conviction, as he was not indicted for the March 2004 and May 2004 felonious assaults until August 17, 2004.  Thus, he was brought to trial on those counts in less than two

-28-

all the factors operates against Kelly.  First, the delay, while just over a year, was not egregiously

long.  Further, one reason for the delay was the victim's failure to appear at a trial.  This resulted

in an additional charge against Kelly alleging that he attempted to hinder or intimidate the victim

from pursuing the charges against him.  Although Kelly asserted his right to a speedy trial, he

has failed to make any argument suggesting that the delay prejudiced his defense.  The Supreme

Court has indicated that the "most serious" form of prejudice occurs when a delay hinders a

defendant's ability to adequately prepare his defense.  *Barker*, 407 at 532.  Consequently,

Kelly's argument that his federal constitutional right to a speedy trial was violated is weak and

insufficient.  Therefore, his concomitant claim that appellate counsel was ineffective for failing

to adequately develop this claim is without merit.  There is not a reasonable probability that

inclusion of the issue would have changed the outcome of Kelly's appeal.

## V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Kelly's Petition be

DENIED.

s/ Greg White
U.S. MAGISTRATE JUDGE


Date: December 15, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

months time – a delay that does not remotely approach the threshold requirement.